Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 92 C 1647 | **DATE** | 8/3/2001 |
| **CASE TITLE** | Peters vs. The Northern Trust Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of Frank E. Peters to reconsider Judge Andersen's rulings barring certain claims on the ground of witness immunity [230] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 6 2001 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | FILED FOR DOCKETING | |
| | Copy to judge/magistrate judge. | 01 AUG -3 PM 5:48 | 8/3/2001 date mailed notice |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD7 mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FRANK E. PETERS, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | 92 C 1647 |
| v. | ) | |
| | ) | |
| THE NORTHERN TRUST COMPANY, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

DOCKETED
AUG 0 6 2001

## MEMORANDUM OPINION AND ORDER

Frank E. Peters ("Peters") moves for reconsideration of this court's prior ruling (issued by Judge Anderson on July 12, 1999), holding that the doctrine of witness "immunity [granted by British ("U.K.") law] bars Peters . . . from seeking relief based on any alleged misrepresentations and/or omissions [The Northern Trust Company ("Northern")] may have made to British law enforcement," and, likewise, that Northern was "immune from suit for producing the two-signature extract to British law enforcement." *Peters* v. *The Northern Trust Co.*, No. 92 C 1647, 1999 WL 515481, at *16 & 17 (N.D. Ill. July 15, 1999). In July, 1999, Peters moved to reconsider Judge Andersen's ruling based upon Peters' reading of *Taylor* v. *Serious Fraud Office*, 3 W.L.R. 1040, 1999 WL 1043750 (H.L. 1998). Judge Andersen denied Peters' motion, reasoning that *Taylor*'s statement that witness immunity would not apply to malicious prosecution actions did not support reversal of his previous ruling because Peters never claimed recovery under a malicious prosecution theory and, regardless, he could not meet the elements of malicious prosecution under U.K. law because he could not show that Northern set the law in motion against him in a criminal charge. Presently, Peters argues that after Judge Andersen's

decision, the British courts issued several decisions narrowing the scope of the witness immunity doctrine and that, based on these recent decisions, Judge Andersen's prior rulings on this issue "effectively have been overruled." (Peters' Mot. at 3.) The three cases Peters cites in support are *L Minor v. Reading Borough Council*, 1 F.C.R. 673, 2001 WL 172098 (C.A. 2001); *Darker v. Chief Constable of the West Midlands Police*, [2001] 1 A.C. 435, 3 W.L.R. 747, 2000 WL 989479 (H.L. 2000); and *Arthur J. Hall & Co. v. Simons*, 3 W.L.R. 543, 2000 WL 976011 (H.L. 2000).

In *L Minor*, Lord Justice Otton explained that witness immunity serves an important function for the proper administration of justice. Lord Otton further explained, citing *Taylor*, that the witness immunity doctrine "is not absolute or a total bar to proceedings. It does not preclude actions founded on an abuse of process, such as malicious prosecution, even where an essential step in commencing the prosecution was a statement." It is within the limitations set forth in this statement that Lord Otton's reasoning must be read and, as such, *L Minor* does not, as Peters argues, narrow the scope of witness immunity stated in *Taylor* as Peters suggests or undermine Judge Andersen's reading of the *Taylor* case. In *Taylor*, Lord Hoffman explained as follows:

> As the policy of the immunity is to encourage freedom of expression, it is limited to actions in which the alleged statement constitutes the cause of action. In *Marrinan v. Vibart* [1963] 1 Q.B. 528 the Court of Appeal held that the immunity in respect of statements made in court or with a view to a prosecution could not be circumvented by alleging that it formed part of a conspiracy with other witnesses to give false evidence. That seems to me to be right. On the other hand, the immunity does not apply to actions for malicious prosecution where the cause of action consists in abusing legal process by maliciously and without reasonable cause setting the law in motion against the plaintiff. It does not matter that an essential step in setting the law in motion was a statement made by the defendant to a prosecuting authority or even the court: *see Roy v. Prior* [1971]

2

A.C. 470.

> Actions for defamation and for conspiracy to give false evidence plainly fall within the policy of the immunity and actions for malicious prosecution fall outside it. In between, there is some disputed ground. . . .

1998 WL 1043750, at *18. Lord Otton, therefore, must have viewed the plaintiffs' claim of conspiracy to injure against the police officers as an abuse of process claim analogous to malicious prosecution. Moreover, Lord Otton tellingly stated:

> In my judgment the allegations contained in the statement of the case are capable of amounting to an abuse of the police's position. It is also arguable that the immunity should not be available to give the police the protection for matter which, on one view of the facts, was designed to defeat the ends of justice rather than to serve them by initiating or causing to be initiated the family proceedings based on groundless allegations of child abuse of L.

Likewise, in *Darker*, the plaintiff's claims against the police were for conspiracy to injure and misfeasance in public office and whatever narrowing of the immunity doctrine that case supports, it has not been read by later courts as applying to cases outside the abuse of process genre. *L Minor* was issued some 10 months after *Darker* and paraphrased *Darker*'s holding as follows:

> [T]he House of Lords . . . held that public policy required in principle that those who suffered a wrong should have a right to remedy; that, although the absolute immunity from action given in the interests of the administration of justice to a party or witness, including a police witness, in respect of what he said or did in court extended to statements made for the purpose of court proceedings and to prevent him being sued for conspiracy to give false evidence, public policy did not require it to be extended to things done by the police during the investigative process which could not be fairly said to form part of their participation in the judicial process as witnesses; that, in particular, the immunity did not extend to cover the fabrication of false evidence; and that, accordingly, the plaintiff's statement of claim should not have been struck out and the action should be allowed to proceed to trial.

Significantly, the various Lord Justices' reasoning in *Darker* all address the specific issue of

3

police misconduct, as many of their comments evidence, and whatever support Peters gleans from the Lord Justices' statements in that case must be read in the context of which the Lords were speaking. For example, Lord Hope explained that the plaintiffs' claims were "based on allegations about things done by the police while they were engaged in the investigation of crime and during the process of preparing the case for trial," [2001] 1 A.C. at 446, Lord Cooke explained that "witness immunity is a general doctrine applying to all persons called upon to give evidence, whereas the function of official investigation is limited to the police and various other public officials. Conduct which is primarily and naturally to be seen as belonging to the investigatory function, even though it may have some ultimate link with the giving of evidence, should not be within the general protection," *id.* at 454, Lord Clyde stated that "[t]he issue in the present case is a narrow one: whether an absolute immunity necessarily attaches to police officers who among other things, as is alleged, along with an informer fabricated statements against the plaintiffs and themselves conspired to cause them to be charged with offenses which they knew or believed to be false," *id* at 456, and Lord Hutton stated that "the issue which arises on this appeal concerns the width of the absolute immunity from civil action granted to the police officer in respect of such work," *id.* at 462. Lord Hutton also favorably quoted the following passage of Sir Richard Scott V-C from *Bennet v. Commissioner of Police of the Metropolis*, [1998] 10 Admin. L.R. 245, 254:

> [I]t is clear that neither the police nor the CPS are entitled to a blanket immunity against tort actions arising out of the manner in which they discharge their duties. Actions for malicious prosecution can be brought. Actions against the police for assault, in using excessive force in effecting an arrest or in interrogating a suspect, can be brought. Why should an action for misfeasance in public office not be brought? I can see no reason why not. The police and the CPS, like everyone else, are subject in the discharge of their duties to the rule of law. There is no

public interest that requires them to be afforded immunity against actions based on malicious or knowing abuses of their powers.

[2001] 1 A.C. at 470. Further, Lord Hutton quoted the above-quoted statement by Lord Justice Hoffman in *Taylor* where he explains that certain cases fall within and certain cases fall outside the witness immunity policy. *See id.* at 471.

Judge Andersen has already found that Peters cannot sustain a claim for malicious prosecution, and Peters makes no argument that his claims fall within the category of claims stated in *Taylor* to which witness immunity would not apply (indeed, Peters fails to illuminate the court on which claims he is attempting to revive). Moreover, any claims Peters were to make based on Northern's contacts with the British police do not appear to qualify as an abuse of process for the same reason Judge Andersen found that Peters could not sustain a malicious prosecution claim –that is, Northern's alleged misdeeds did not constitute an abuse of process. Instead, Northern is alleged to have lied in response to inquiries made by law enforcement authorities, something more akin to a conspiracy to give false testimony than abuse of the legal process. The distinction Judge Andersen made –that there is a difference between allowing claims against individuals who actively initiate malicious criminal prosecutions and exposing "to civil liability individuals questioned during the course of a criminal investigation which they did not initiate"– remains, therefore, equally applicable after the issuance of the cases cited by Peters.

Finally, *Arthur J.S. Hall* is wholly unpersuasive authority, as Lord Steyn stated the immunity issue as "[o]ught the *current immunity of an advocate in respect of and relating to conduct of legal proceedings* as enunciated by [two prior cases] to be maintained in England" (emphasis added), and the opinion shows that the doctrine of barrister immunity is distinct from

the witness immunity doctrine at issue here. As such, none of the cases Peters cites support narrowing witness immunity under U.K. law so as to allow claims against Northern based on Northern's contacts with the British Police. For these reasons, Peters' motion to reconsider Judge Andersen's rulings barring certain claims on the ground of witness immunity [#230] is DENIED.

Date: August 3, 2001          Enter: *[signature]*
                              JOAN HUMPHREY LEFKOW
                              United States District Judge